1  Michael W. Ellison, Esq. (SBN 145832)
   mellison@sehlaw.com
2  Michael G. Bosko (SBN 162571)
   mbosko@sehlaw.com
3  SMITH ♦ ELLISON
   A Professional Corporation
4  2151 Michelson Drive
   Suite 185
5  Irvine, California 92612
   Telephone:   (949) 442-1500
6  Facsimile:    (949) 442-1515

7  Jared L. Cherry (pro hac vice admission)
   PHILLIPS WINCHESTER, LLC
8  4001 South 700 East, Suite 500
   Salt Lake City, Utah 84107
9  Telephone: (801) 935-4932
   Facsimile: (801) 935-4936
10
   Attorneys for Plaintiffs
11 Nexon America Inc. and
   Nexon Korea Corporation
12
                    UNITED STATES DISTRICT COURT
13
          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
14

15 NEXON AMERICA INC. and NEXON          )  Case No. 5:21-cv-00886-FWS-KK
   KOREA CORPORATION,                    )
16                                       )
                Plaintiffs,              )  **MOTION FOR DEFAULT JUDGMENT**
17                                       )
         v.                              )  Hon. Fred W. Slaughter
18                                       )
   GK, NATHAN JONES, COLIN               )
19 SULLIVAN, JOHN KIM, MIKE, JOHN        )
   ARTUZ, MARVIN LEI, KEVIN KIM,         )
20 ALAIN KOOPMANS, MATTHEW               )
   RAHMINOV, DESTIN ADAMSKI,             )
21 DRIVEN ENTERPRISE, VICTOR PARK,       )
   MOISES SILVERIO PAULUS, DOR           )
22 AVITAL, BIBI ALI, JANCARLOS           )
   GARCÍA SAAVEDRA, TONY NGO,            )
23 SELIM AYDOGAN, WENHAO MA,             )
   HAO VU; MATTHEW WOODS, and ALL        )
24 FUNDS HELD BY PAYPAL, INC. AND        )
   TRACEABLE TO THE DEFENDANTS           )
25 LISTED ABOVE, *in rem*;              )
                                         )
26              Defendants.              )
                                         )
27                                       )
                                         )
28                                       )
                                         )

**TO THE COURT:**

**PLEASE TAKE NOTICE** that on June 23, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Nexon America Inc. and Nexon Korea Corporation ("Plaintiffs") will and hereby do apply for entry of default judgment against Defendants GK, Nathan Jones, Colin Sullivan, John Kim, Mike, John Artuz, Marvin Lei, Alain Koopmans, Matthew Rahminov, Destin Adamski, Driven Enterprise, Victor Park, Moises Silverio Paulus, Dor Avital, Bibi Ali, Jancarlos García Saavedra, Tony Ngo, Selim Aydogan, Wenhao Ma, and Hao Vu (collectively the "Defaulting Defendants") pursuant to Fed. R. Civ. P. 55(b) and L.R. 55-1. Plaintiffs seek a default judgment comprising (i) disgorgement of profits derived by Defendants or in the alternative, statutory damages of $60,000.00 (*i.e.,* $30,000.00 for each of the two copyright registrations at issue) pursuant to 15 U.S.C. § 504(c)(1), whichever is greater, (ii) an award of statutory damages of $200.00 per act of circumvention pursuant to 17 U.S.C. § 1203(c)(3)(A), (iii) attorneys' fees as determined pursuant to L.R. 55-3, and (iv) a permanent injunction in the form submitted herewith.

Good cause exists for the entry of default judgment in accordance with Fed. R. Civ. 55 and L.R. 55-1. The Clerk of the Court entered the default of the Defaulting Defendants.[1] Defendants are not minors or incompetent persons and are not subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 521. (*See* Exhibit A, Declaration of Jared L. Cherry (the "Cherry Dec."), ¶¶ 10-17.)

This Motion for Entry of Default Judgment is based on this notice of motion, the attached memorandum of points and authorities, the declaration of Jared L. Cherry attached hereto as

---

[1] ECF No. 91 (entering default against Destin Adamski, Bibi Ali, John Artuz, Dor Avital, and Selim Aydogan); ECF No. 92 (entering default against Driven Enterprise, GK, Nathan Jones, John Kim, and Marvin Lei); ECF No. 93 (entering default against Mike, Wenhao Ma, Tony Ngo, Victor Park, and Moises Silverio Paulus); ECF No. 94 (entering default against Matthew Rahminov, Jancarlos Garcia Saavedra, Colin Sullivan, and Hao Vu); ECF No. 97 (entering default against Alain Koopmans).

1   Exhibit A, all papers and pleadings on file in this action, and on such other and further evidence

2   and argument as the Court may lawfully consider in the exercise of its discretion.

3      Date: May 20, 2022                          PHILLIPS WINCHESTER, LLC

4                                                  /s/ Jared L. Cherry

5                                                  Jared L. Cherry (admitted *pro hac vice*)
                                                   Counsel for Plaintiffs Nexon America
6                                                  Inc. and Nexon Korea Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**CONTENTS**

I.      INTRODUCTION...........................................................................................1

II.     LEGAL STANDARD ....................................................................................2

III.    ARGUMENT .................................................................................................3

      a.   Plaintiffs Satisfy the Requirements for Entry of a Default
         Judgment. ..........................................................................................3

           i.   Subject Matter Jurisdiction. ...................................................3

           ii.  Personal Jurisdiction. .............................................................3

           iii. Service of Process....................................................................6

      b.   Entry of Default Judgment on All Counts is Warranted.....................7

           i.   Plaintiffs' First Amended Complaint States Valid
              Claims Upon Which Relief Can Be Granted. ..........................8

      c.   Nexon will Suffer Prejudice Absent a Default Judgment. .................13

      d.   The Defaults are Not the Result of Excusable Neglect......................13

      e.   Public Policy Does not Militate Against a Default
         Judgment. ........................................................................................13

IV.     NEXON IS ENTITLED TO THE MONETARY RELIEF SOUGHT IN ITS
      VERIFIED COMPLAINT. ..........................................................................14

      a.   Nexon is Entitled to Disgorgement of Profits Under the
         Copyright Act against the Hack Developers and the Hack
         Users.................................................................................................14

           i.   Profits of the Hack Developers. .............................................15

           ii.  Profits of the Hack Users. ......................................................15

      b.   As an Alternative to Disgorgement, Nexon is Entitled to
         Statutory Damages Under the Copyright Act. ...................................16

      c.   Nexon is Entitled to Statutory Damages Under the DMCA
         for Circumvention of Nexon's Access Control Measures. ................18

           i.   Circumvention Award Against the Hack Developers. ............18

           ii.  Circumvention Award Against the Hack Users.......................19

      d.   Summary of Damages Requested. ......................................................20

i

V.   NEXON IS ENTITLED TO THE INJUNCTIVE RELIEF SOUGHT IN ITS
     VERIFIED COMPLAINT. ............................................................................21

     a.   Irreparable Injury and Lack of an Adequate Remedy at
          Law......................................................................................................22

     b.   The Balance of Harms Tips Conclusively in Nexon's
          Favor. ..................................................................................................22

     c.   The Public Interest Favors Fair Competition and
          Preventing Infringement. ...................................................................23

VI.  THE COURT SHOULD AWARD NEXON'S REASONABLY INCURRED
     ATTORNEYS' FEES. ..................................................................................23

ii

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*A&M Records, v. Napster*, 239 F.3d 1004 (9th Cir. 2001) .......................................................... 9

4

*Adobe Sys., v. Tilley,* No. 09-01085-PJH, 2010 WL 309249 (N.D. Cal.
5
Jan. 19, 2010) ........................................................................................................................ 20

6

*Blizzard Entm't. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL
4054095 ................................................................................................................................. 18

7

*Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005) ..................................................................... 17

8

*C.B. Fleet Co., v. Unico Holdings*, 510 F. Supp.2d 1078 (S.D. Fla. 2007) ............................. 26

9

*Chamberlain Grp., v. Skylink Techn.*, 381 F.3d 1178 (Fed. Cir. 2004) .................................... 14

10

*Craigslist, v. Naturemarket*, 694 F.Supp.2d 1039 (N.D. C.A. 2010) ........................................ 6

11

*Derek Andrew, v. Poof Apparel*, 528 F.3d 696, 702 (9th Cir. 2008) ........................................ 19

12

*eBay v. MercExchange*, 547 U.S. 388 (2006) ........................................................................... 24

13

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ......................................................................... 2

14

*Facebook, v. Power Ventures*, 252 F.Supp.3d 765 (N.D. Cal. 2017) ....................................... 25

15

*Facebook. v. Fisher*, No. C 09-05842 JF (PVT), 2009 WL 5095269
16
(N.D. Cal. Dec. 21, 2009) ..................................................................................................... 25

17

*Fla. Atl. Univ. Bd. of Trustees v. Parsont*, 465 F.Supp.3d 1279 (S.D. Fla.
2020)....................................................................................................................................... 25

18

*Fogerty v. Fantasy*, 510 U.S. 517 (1994)................................................................................... 27

19

*Gen. Motors v. Urban Gorilla*, 500 F.3d 1222 (10th Cir. 2007) .............................................. 26

20

*Glacier Films (USA) v. Turchin*, 896 F.3d 1033 (9th Circ. 2018) ........................................... 28

21

*HDR Env't v. Deason*, No. 15CV1402 JAH (NLS), 2018 WL 1627229
22
(S.D. Cal. Mar. 29, 2018)...................................................................................................... 10

23

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ........................................................... 4

24

*j2 Cloud Servs. v. Fax87*, No. 13-05353 DDP, 2017 WL 1535083 (C.D.
Cal. Apr. 27, 2017).................................................................................................................. 5

25

*Johnson v. Jones*, 149 F.3d 494 (6th Cir.1998) ....................................................................... 17

26

*Krause Int'l v. Reed Elsevier*, 866 F.Supp. 585 (D.D.C. 1994) ............................................... 25

27

*Lahoti v. Vericheck*, 636 F.3d 501 (9th Cir. 2011) .................................................................. 27

28

*Landstar Ranger, v. Parth Enters.*, 725 F.Supp.2d 916 (C.D. Cal. 2010) ................................. 2

*Loomis v. Slendertone Distribution*, 420 F.Supp.3d 1046 (S.D. Cal. 2019) ................................................................................................. 5

*Mavrix Photo v. Brand Techs.*, 647 F.3d 1218 (9th Cir. 2011) ................................... 5

*Microsoft v. BH Tech*, No. 2:16-CV-2664-ODW-RAO, 2016 WL 8732074 (C.D. Cal. Sept. 2, 2016) ....................................................... 27

*N.A.S. Imp., v. Chenson Enters.*, 968 F.2d 250 (2d Cir. 1992) ......................... 19

*Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014)............................ 10

*Optician Ass'n of America v. Independent Optician of Am.*, 920 F.2d 187 (3d Cir. 1990) .................................................................................... 26

*Peer Intern. v. Pausa Records,* 909 F.2d 1332 (9th Cir. 1990) ................................ 20

*Physician's Surrogacy, v. German*, Case No. 17-cv-718-MMA, 2018 WL 638229 (S.D. Cal. Jan. 31, 2018) .................................................. 12

*Polar Bear Prods. v. Timex*, 384 F.3d 700 (9th Cir. 2004)........................................ 16

*Pom Wonderful v. Pur Beverages*, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015)........................................................................................... 25

*Rosen v. Terapeak*, 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015)........................................ 7

*Schwarzenegger v. Fred Martin Motor*, 374 F.3d 797 (9th Cir. 2004) ..................................... 4

*SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007) ................................................. 4

*See Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, 2019 WL 1117533 (N.D. Cal. Mar. 11, 2019) ............................................................. 7

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ............................................. 9

*Sony Music Ent. v. Global Arts Prod.*, 45 F.Supp.2d 1345 (S.D. Fla. 1999)........................................................................................ 25

*tsaeng v. John Wiley & Sons*, 136 S. Ct. 1979 (2016) ................................. 27

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) .................................. 13

*Wall Data v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769 (9th Cir. 2006).................................................................................. 10

*Walpole Woodworkers, v. Atlas Fencing*, 218 F.Supp.2d 247 (D. Conn. 2002).................................................................................... 19

**Statutes**

15 U.S.C. § 1116 ............................................................................. 22

iv

15 U.S.C. § 1117 ................................................................................................ 24

17 U.S.C. § 1203 ................................................................................................ 18

17 U.S.C. § 410 .................................................................................................... 8

17 U.S.C. § 504 ................................................................................................... 17

17 U.S.C.A. § 504 .............................................................................................. 15

18 U.S.C. § 1030 ................................................................................................ 11

Cal. Civ. Code § 3344 ........................................................................................ 24

**Rules**

Fed. R. Civ. P. 55 ................................................................................................. 2

Fed. R. Civ. P. 8 ................................................................................................... 2

**Treatises**

3 Nimmer on Copyrights § 10.15 ......................................................................... 9

4 Nimmer on Copyrights § 14.03 ....................................................................... 15

4 Nimmer on Copyrights § 14.04 ....................................................................... 17

Federal Practice and Procedure § 2688.1 (4th ed. 2016) ..................................... 2

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This is a blatant case of infringement involving a group of computer hackers that generated millions of dollars for themselves by hacking Nexon's MapleStory game. Nexon is the creator and owner of more than 80 live games operated across more than 190 countries. MapleStory is one of Nexon's most popular games, with over 180 million players worldwide. MapleStory's popularity and devoted fan base have made it a target for hackers, including the Defendants.

Defendants GK, Nathan Jones, Colin Sullivan, and John Kim (the "Hack Developers") are individuals or entities responsible for developing a program named Terminal Manager (the "Hack") that exploits the copyrighted software code comprising MapleStory. The Hack Developers offered the Hack for sale on a subscription basis via GAMEKILLER.NET (the "GameKiller Website"), a self-described "game hacking & cheating community."[2] The Hack Developers completed at least 35,196 sales of the Hack, and generated revenue of more than $1,131,997.61[3] from transactions conducted via PayPal. The Hack Developers also accepted payment in Cryptocurrency,[4] but no records related to those transactions are available.

The remaining Defendants are individuals that purchased the Hack at least 100 separate times (the "Hack Users"). The Hack Users opened MapleStory accounts, used the Hack to illicitly obtain story elements, characters, audiovisual elements, and large volumes of Nexon's in-game currency, and then sold the accounts to other MapleStory users, all in violation of the End User License Agreement ("EULA") governing the use of MapleStory.

---

[2] Doc. No. 16, Nexon's First Amended Complaint ("FAC") at ¶¶ 15.
[3] Cherry Dec. at ¶ 16.
[4] FAC at ¶ 72.

1

The Defaulting Defendants have opted to default because there is no defense for the conduct at issue. Instead, they are merely attempting to avoid consequences for their actions by remaining silent and relying on the anonymity of the Internet.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b) permits a district court to order a default judgment following an entry of default under Rule 55(a). Fed. R. Civ. P. 55(b). Pursuant to the Local Rules, an application for a default judgment must set forth: (1) when and against what party default was entered; (2) the pleadings to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemember's Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2). *See* L.R. 55-1.

The grant or denial of a motion for default judgment is a matter within a court's discretion. *Landstar Ranger, v. Parth Enters.*, 725 F.Supp.2d 916, 919 (C.D. Cal. 2010). In exercising this discretion, courts consider: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiffs' substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) potential disputes concerning material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the public policy favoring decisions on the merits. *Id.* at 919-20 (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

Once a default has been entered, the factual allegations of the complaint (except those concerning damages) are deemed to have been admitted by the non-responding party. Fed. R. Civ. P. 8(b)(6).[5] The Court must evaluate the complaint's unchallenged factual allegations to determine

---

[5] *See also* Federal Practice and Procedure § 2688.1 (4th ed. 2016) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

whether they establish liability and then determine the "amount and character" of the relief. *Landstar Ranger*, 725 F.Supp.2d at 920.

### III.   ARGUMENT

#### a.   **Plaintiffs Satisfy the Requirements for Entry of a Default Judgment.**

The jurisdictional and other prerequisites for entry of a default judgment are all satisfied.

##### i.   Subject Matter Jurisdiction.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Circumvention of Copyright Protection Systems, 17 U.S.C. § 1201, and it further has supplemental jurisdiction over the state law claims, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

##### ii.   Personal Jurisdiction.

All Defaulting Defendants are subject to the personal jurisdiction of this Court based on their acceptance of the terms of the EULA,[6] which provides:

Except as otherwise provided for in Section X, you agree to submit to the personal and exclusive jurisdiction of the courts located within the specified forum:

| Game Publisher | Governing Law | Forum |
|---|---|---|
| NEXON Co., Ltd. | Japan | Tokyo District Court |
| Nexon America Inc. | California, USA | State or Federal Court within the County of Los Angeles, California |
| Nexon Korea Corporation | Korea | Seoul Central District Court of Korea |

---

[6] FAC at ¶ 60 ("Each Defendant accepted the EULA in connection with the installation and/or use of MapleStory.")

FAC at ¶ 62. Nexon America is the game publisher of MapleStory. The Ninth Circuit has recognized that accepting a forum selection clause evidences consent to personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). A party disputing the validity of a forum selection clause bears the burden of proving the clause is unenforceable. *Id.*

In the alternative, Defendants are subject to personal jurisdiction of this Court under California's long-arm statute, which is co-extensive with federal due process. *Schwarzenegger v. Fred Martin Motor*, 374 F.3d 797, 800-01 (9th Cir. 2004). The Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has articulated a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Schwarzenegger*, 374 F.3d at 802.

The Hack Developers operated and maintained a commercial website and generated at least $688,316.22 in revenue by selling the Hack.[7] PayPal's records provide information about the country in which a purchaser is located, and PayPal's records for the Hack Developers show 14,987 transactions with U.S.-based purchasers of the Hack.[8] At least some of those purchases

---

[7] Cherry Dec. at ¶ 23.
[8] Cherry Dec. at ¶ 17.

involve California residents, including Defendant Matthew Woods, Defendant Victor Park (Exhibit J), and Defendant Driven Enterprise (Exhibit I).[9]

It is well established that "[p]ersonal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents."[10] There is proof that the Hack Developers engaged in hundreds of separate sales to purchasers in California,[11] and it is entirely reasonable to conclude that many of the 14,987 sales with a U.S.-based counterparty were made to California residents.[12] The Hack Developers were "conducting business over the internet" and sold products to forum residents.

Moreover, the Hack is targeted at Nexon, which has its principal place of business in this jurisdiction. Under similar circumstances, a court in the Northern District of California ruled: "

> Defendants also knowingly and intentionally accessed and used Plaintiff's website and developed, marketed, and _sold their software and services for the sole purpose of enabling users to bypass the security measures of Plaintiff's website, in violation of its TOUs. Because Plaintiff is headquartered in California and maintains its website in California, Defendants' actions directly targeted California_, and Defendants knew that Plaintiff would suffer the brunt of its harm in California. Taking these facts into consideration, the undersigned finds that Plaintiff has sufficiently shown that Defendants purposefully directed their conduct at California.

_Craigslist, v. Naturemarket_, 694 F.Supp.2d 1039, 1053 (N.D. C.A. 2010) (emphasis added). As in _Craigslist_, the conduct at issue here allowed users to "bypass the security measures" implemented by Nexon and targeted Nexon America (_i.e._, the game publisher) in this jurisdiction.

---

[9] Cherry Dec. at ¶ 18-21.
[10] _Loomis v. Slendertone Distribution_, 420 F.Supp.3d 1046, 1068-69 (S.D. Cal. 2019) (quoting _j2 Cloud Servs. v. Fax87_, No. 13-05353 DDP, 2017 WL 1535083, at *6 (C.D. Cal. Apr. 27, 2017)).
[11] Cherry Dec. at ¶ 18-21 (208 sales to Defendant Victor Park, 105 sales to Defendant Matthew Woods, and 213 sales to Defendant Driven Enterprise).
[12] The size of the California market permits the inference that a significant portion of the Hack Developers U.S. sales are to California residents. _See Mavrix Photo v. Brand Techs._, 647 F.3d 1218, 1230 (9th Cir. 2011) ("Based on the website's subject matter, as well as the size and commercial value of the California market, we conclude that [the defendant] anticipated, desired, and achieved a substantial California viewer base.").

5

Each of the Hack Users also engaged in more than 100 transactions, many of which explicitly refer to sale of the Hack.[13] PayPal's records in response to the Second Subpoena included 40,061 transactions on the PayPal platform and 512 transactions on the Venmo platform conducted by the Hack Users. These transactions included 14,060 transactions with U.S.-based counterparties. Cherry Dec. at ¶ 24. The Hack Users used the Hack to "bypass the security measures" of MapleStory and misappropriate in-game currency.

The second prong is satisfied because, just as in *Craigslist*, "Defendants' willful copyright infringement, trademark infringement, and their sale of products and services that circumvent Plaintiff's security measures were intentionally directed at Plaintiff, a company headquartered in the forum state, and the harm caused by Defendants was felt in California." This targeting of a California business, in conjunction with the Defendants' many other contacts with the forum, is sufficient to confer jurisdiction.[14]

Finally, the exercise of jurisdiction is reasonable because each Defendant engaged in hundreds or thousands of transactions that violated Nexon's rights. Defendants could have appeared before this Court if they disputed the allegations at issue in this lawsuit; however, Defendants instead have defaulted in the hope of avoiding consequences of their actions.

### iii.   Service of Process.

---

[13] Cherry Dec. at ¶ 16 (showing total number of transactions); Cherry Dec. at ¶ 23 (showing Hack Developer transactions that explicitly refer to the Hack); Cherry Dec. at ¶ 26 (showing Hack User transactions that explicitly refer to the Hack).

[14] *See, e.g., See Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, 2019 WL 1117533, at *4 (N.D. Cal. Mar. 11, 2019) ("In cases alleging the violation of intellectual property rights, specific jurisdiction may also exist 'where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state'"); *Rosen v. Terapeak*, 2015 WL 12724071, at *6 (C.D. Cal. Apr. 28, 2015) (recognizing that "Ninth Circuit precedent provides for a finding of personal jurisdiction in the plaintiff's forum where a defendant willfully infringes the intellectual property rights with knowledge of the plaintiff's place of residence").

Defendants have sought to hide their identities using fictitious names and online personas. As such, the Court ruled:

> Here, Nexon rightly asserts that the actions of the Defendants have occurred entirely online, and nowhere are their identities disclosed. Indeed, many of the Defendants have used physical addresses that appear to be fake. Their email addresses, however, are likely to be legitimate because email provides the mechanism for Defendants to access their PayPal accounts. Thus, email is the fairest and surest means of communication for Nexon to reach Defendants; the Court finds that service of Defendants by email is reasonably calculated to give actual notice to Defendants.

Doc. No. 26, Page ID #:217 (internal quotations and citations omitted). The court entered summonses to each Defendant, and Nexon completed service as directed by the Court. Doc. No. 80, Page ID #:471.

Service by email was effective, as evidenced by the fact that Defendants Matthew Woods and Kevin Kim both contacted counsel for Nexon after being served, which resulted in the dismissals without prejudice of Mr. Woods and Mr. Kevin Kim from this case. In addition, Mr. Woods provided communications with Defendant Victor Park about this lawsuit. These communications relate to this lawsuit and establish that Mr. Park also has actual knowledge of this lawsuit. These facts, along with the Court's above-quoted rationale, establishes that the Defaulting Defendants have actual notice of Nexon's complaint and have deliberately decided to default rather than seek to defend their conduct.[15]

**b.  Entry of Default Judgment on All Counts is Warranted.**

---

[15] No notice of this motion is required pursuant to Fed. R. Civ. P. 55(b)(2) because the Defaulting Defendants have not appeared in the action. Nonetheless, Nexon will make additional efforts to provide notice to each Defaulting Defendant. Specifically, Nexon will attempt to serve each Defaulting Defendant with an address located in the United States. As noted in the certificate of service, Nexon's counsel will also send a copy of Nexon's motion and all related materials to each Defaulting Defendant by email and by mail (if a physical address was provided by PayPal), will send a text message (if a cellular telephone number was provided by PayPal) with a link to the complete filing, and will contact each Defendant by telephone (if a telephone number was provided by PayPal). Nexon will provide additional information to the Court prior to the hearing about its efforts to provide notice to each Defaulting Defendant.

7

Under the multi-factor test employed by courts in this Circuit and set forth above, Plaintiffs are entitled to a default judgment against Defendants.

### i. **Plaintiffs' First Amended Complaint States Valid Claims Upon Which Relief Can Be Granted.**

Nexon's First Amended Complaint alleges that the Defaulting Defendants engaged in the precise conduct that Defendants themselves admit on the GAMEKILLER website, namely "hacking" and "cheating." The Hack Developers violated Nexon's registered copyrights and trademarks, all of the Defaulting Defendants violated the terms of the EULA, all of the Defaulting Defendants violated the terms of the Computer Fraud and Abuse Act, and all of the Defaulting Defendants circumvented Nexon's copyright protection systems.

### 1. **Defendants have Infringed Plaintiffs' Copyrights.**

To prevail on a claim for copyright infringement, Plaintiff must prove: (1) ownership of a valid copyright; and (2) that Defendants copied protected elements of the copyrighted work. *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (citation omitted). "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in [17 U.S.C.] § 106." *A&M Records, v. Napster*, 239 F.3d 1004, 1013 (9th Cir. 2001).

The first element is presumptively established by U.S. Copyright Registration Nos. PA0001741698 and PA0001793977 (the "Copyright Registrations")[16] because a copyright registration serves as prima facie evidence of validity and ownership. 17 U.S.C. § 410(c). The "hacking" and "cheating" conducted by Defendants relies on unlawful exploitation of Nexon's exclusive rights under the Copyright Act. Specifically, the Defendants have obtained unauthorized copies of "story elements, characters, items, audiovisual elements"[17] using the Hack. Defendants

---

[16] FAC at ¶ 84 ("NEXON KR is also the owner of United States Copyright Registration Nos. PA0001741698 and PA0001793977 (the "Copyright Registrations") for MAPLESTORY.")
[17] FAC at ¶ 85.

8

then sold these items to third parties in direct violation of the terms of Nexon's EULA. FAC at ¶¶ 107-108. Such violations are copyright infringement because "when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement." 3 Nimmer on Copyrights § 10.15.

### 2. **Defendants have Breached the EULA.**

"To establish a prima facie case for breach of contract, a plaintiff must plead and prove four elements: 1) a valid contract, 2) plaintiff's performance or excuse for nonperformance, 3) defendant's breach and 4) damage to the plaintiff therefrom."[18] The EULA is a valid contract[19] that must be accepted by users prior to installation and use of MapleStory. FAC ¶¶ 60-61. Nexon has fully performed its obligations under the EULA. *Id.* at ¶ 105.

The EULA prohibits users from (i) hacking MapleStory and selling, advertising, or posting information on hacks, (ii) transferring accounts between players, (iii) selling virtual items (such as MESOS currency and/or items purchased using MESOS currency), and (iv) imposing unreasonable and disproportional loads on NEXON's network or infrastructure. *Id.* at ¶ 106. Each Defendant breached at least one of these provisions, causing damage to Nexon by (i) consuming additional resources as a result of their hacking of MapleStory, (ii) requiring Nexon's employees to expend time attempting to prevent them from accessing Nexon's servers, and (iii) diverting revenue from Nexon, in the case of the Hack Users, due to their generation and sale of MESOS currency and other in-game content to other users of MapleStory. *Id.* at ¶ 131.

---

[18] *HDR Env't v. Deason*, No. 15CV1402 JAH (NLS), 2018 WL 1627229, at *6 (S.D. Cal. Mar. 29, 2018) (internal alteration and quotation marks omitted) (construing California law).
[19] *Wall Data v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 782 (9th Cir. 2006) (stating that click-through agreements are "clearly enforceable in California"); *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1176 (9th Cir. 2014) (noting courts have "consistently enforced browsewrap agreements where the user had actual notice of the agreement").

The Hack Developers provided explicit notice on the GAMEKILLER Website that use of the Hack "may break the terms and conditions of the game publisher you agreed to when installing the game." This notice must be interpreted as a concession that the Hack Developers had knowledge of Nexon's "terms and conditions," and that they intentionally disregarded their obligations under Nexon's "terms and conditions."

Despite this explicit warning that use of the Hack "may break the terms and conditions of the game publisher you agreed to when installing the game," each of the Hack Users purchased at least 100 separate copies of the Hack. *Id.* at ¶ 56. The Hack included "evasion settings" (*Id.* at ¶ 79), which the Hack Users manipulated to avoid detection and avoid Nexon's attempts to stop the Hack based on detailed descriptions posted to the GAMEKILLER website. These actions were undertaken so that the Defaulting Defendants could continue their violations of Nexon's rights and reap additional ill-gotten gains. Such actions demonstrate knowing violation of the EULA.



> **SIGN UP AGREEMENT (READ!):**
> Usage of our software might break the terms and conditions of the game publisher you agreed to when installing the game. We do not assume any liability for any kind of damage or disadvantage done to your hardware, software, or game account. Our premium memberships include access to the premium area of our forum, access to our products, and user support. We reserve the right to extend or curtail the contents of the premium memberships anytime without any obligation. Once your membership is upgraded to premium by purchase, you lose the right to claim a refund. All content in the premium area is protected property of us and must not be shared with anyone.

The limited information that Nexon has been able to obtain about the Defendants shows that the Defendants had actual knowledge of their violations of the EULA. For example, as discussed above, the GAMEKILLER website prominently called itself a "game hacking & cheating community." This description would certainly give pause to anyone seeing it about the legitimacy of the site and its services. Moreover, Mr. Park repeatedly admitted to Mr. Woods that his conduct was "illegal," demonstrating a clear knowledge of that his conduct violated Nexon's rights. Exhibit Y, at page 9 ("I don't remember the thing…but i remember that being…it was illegal"), Page 12 ("my parents would be disapointed [sic]… that I did something illegal").

**3. Defendants have Violated the Computer Fraud and Abuse Act.**

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

Congress enacted the CFAA to address the specific conduct in which Defendants are engaged, providing a private right of action for parties injured by hacking. "Relevant here, section 1030(a)(4) provides a cause of against against for the punishment of any individual who knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . . ." *Physician's Surrogacy, v. German*, Case No. 17-cv-718-MMA, 2018 WL 638229, at *9 (S.D. Cal. Jan. 31, 2018). Section 1030(g) provides a private right of action for parties who have been injured by the conduct delineated by the CFAA so long as the defendant's conduct involves one of the factors set forth in specified subclauses of § 1030 (c)(4)(A)(i). *Id.*

> Subclause (I) proscribes conduct that causes a loss of at least $5,000 to one or more persons during any one-year period. Thus, to bring a civil action for a violation of § 1030(a)(4), a plaintiff must show that the defendant: (1) accessed a protected computer, (2) without authorization or exceeding such authorization that was granted, (3) knowingly and with intent to defraud, and thereby (4) furthered the intended fraud and obtained anything of value, causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value."

*Id.* (Internal citation, quotation marks, and alterations omitted).

Defendants intentionally hacked or accessed MapleStory, which is stored on a protected computer, using the Hack,[20] exceeded the authority granted to them in order to, among other things, obtain data in the form of large volumes of Nexon's in-game MESOS currency and create

---

[20] The term "computer" under the CFAA means any device for processing or storing data excluding an automated typewriter, portable handheld calculator, or other similar device, including, for example, websites and video game systems. 18 U.S.C. § 1030(e)(1); *United States v. Nosal*, 676 F.3d 854, 861 (9th Cir. 2012) ("The Internet is a means for communicating via computers: Whenever we access a web page, commence a download, post a message on somebody's Facebook wall, shop on Amazon, bid on eBay, publish a blog, rate a movie on IMDb, read www.NYT.com, watch YouTube and do the thousands of other things we routinely do online, we are using one computer to send commands to other computers at remote locations."). The term "protected computer" means any computer used in interstate or foreign commerce. 18 U.S.C. § 1030(e)(2).

11

accounts loaded with MESOS currency and other in-game items for resale to other users. FAC at ¶¶ 134-137. Defendants did so knowingly and with intent to defraud, as evidenced by the terms of the "Sign Up Agreement" the Hack Developers prominently displayed on the GAMEKILLER website. Such improper access has caused Nexon to sustain losses of more than $5,000 during the past year, arising from loss of the additional resources consumed by Defendants as a result of their hacking of MapleStory, the value of the time of employees of NEXON associated with attempting to prevent Defendants from accessing Nexon's servers, and revenue lost due to Defendants' generation and sale of content to other MapleStory users. FAC at ¶¶ 134-139.

### 4. **Defendants have Circumvented Nexon's Copyright Protection Systems.**

A plaintiff alleging a violation of § 1201(a)(2) must prove: (1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented, (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure. *Chamberlain Grp., v. Skylink Techn.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).

Nexon satisfies each element of its circumvention claim based on the well-pleaded allegations of the FAC. First, Nexon's ownership of MapleStory is established by Nexon's ownership of valid copyright registrations. FAC at ¶ 84. Second, Nexon employs technological measures to control access to MapleStory. *Id.* at ¶ 141. Third, the purpose of the Hack is to enable access to copyrighted content (*e.g.*, story elements, characters, items, audiovisual elements (*Id.* at ¶ 85)) without purchasing the content from Nexon. *Id.* at ¶ 142. Fourth, such actions are not

12

authorized by Nexon. FAC at ¶ 135. Fifth, exploitation of the copyrighted content of MapleStory violates Nexon's right to reproduce such content under 17 U.S.C. § 106(1) and to distribute MapleStory under 17 U.S.C. § 106(3). Finally, Defendants advertised the Hack on a "hacking and cheating" site and the Hack has no other commercially significant purpose. FAC at ¶ 143.

### c. Nexon will Suffer Prejudice Absent a Default Judgment.

Nexon has no recourse without a default judgment because Defendants have failed to appear. *See Landstar Ranger*, 725 F.Supp.2d at 920 ("Denying default judgment here would leave Landstar without a proper remedy."). Further, Plaintiffs would suffer prejudice if Defendants escape consequences, thus sending a message to hackers that they can willfully violate Nexon's rights and enrich themselves by millions of dollars with impunity.

### d. The Defaults are Not the Result of Excusable Neglect.

The defaults are not the product of excusable neglect. This Court considered the best way to provide actual notice to the Defendants and concluded that email was the best vehicle to provide notice. Doc. No. 26, Page ID #:217. Further, Nexon will engage in additional steps to ensure that the Defaulting Defendants have notice of this motion, including sending copies of this motion to the Defaulting Defendants by mail, by email, and by contacting the Defaulting Defendants using the mobile telephone numbers provided by PayPal.

### e. Public Policy Does not Militate Against a Default Judgment.

Although it is preferable to decide cases on the merits, Rule 55 provides for the entry of a default judgment in appropriate circumstances, and no public policy concerns are implicated by the entry of default judgment against the Defaulting Defendants. First and foremost, the general preference of resolving cases on their merits is of little import where, as here, the liability is apparent. Indeed, the Defaulting Defendants either operated or voluntarily chose to participate in a

self-described "hacking and cheating community."[21] Nexon would have been entitled to summary adjudication of liability if the Defaulting Defendants *had* appeared.

Further, other public policy concerns weigh heavily in favor of awarding a default judgment. The Defaulting Defendants targeted Nexon and profited handsomely from their acts of infringement. Further, the Defaulting Defendants have made a strategic decision to flout this Court's jurisdiction and Nexon's intellectual property rights by tactically defaulting in this case. A dangerous precedent is set if *this* is an effective way of avoiding liability.

## IV.     Nexon is Entitled to the Monetary Relief Sought in its Verified Complaint.

This Court should award the monetary relief sought in Nexon's First Amended Complaint in view of Defendants' egregious conduct and the fact that Defendants have derived revenue of $5,823,062.30 through PayPal and Venmo.[22] Permitting Defendants to keep any of their ill-gotten gains would encourage the conduct at issue.

A motion for default judgment provides a plaintiff with an opportunity to "prove up" its damages. *Landstar Ranger*, 725 F.Supp.2d at 923. As set forth below, the Defaulting Defendants profited handsomely from their infringement, and Nexon suffered to an even greater extent.

### a.     Nexon is Entitled to Disgorgement of Profits Under the Copyright Act against the Hack Developers and the Hack Users.

In connection with disgorgement of profits, the Copyright Act provides:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

---

[21] FAC at ¶ 15.

[22] Cherry Dec. at 16. The Hack Developers advertised their acceptance of cryptocurrency, and as such, the revenues are almost certainly higher. FAC at ¶ 72. PayPal also limited its production of responsive records to three years from the date of the First Subpoena and the Second Subpoena.

14

17 U.S.C.A. § 504(b). "[P]rofits are awarded to prevent the infringer from unfairly benefit[t]ing from a wrongful act." H.R. Rep. 94–1476, 1976 U.S.C.C.A.N. at 5777.

"[A] causal link between the infringement and the monetary remedy sought is a predicate to recovery" because only those profits "attributable to the infringement" are recoverable under the Copyright Act. *Polar Bear Prods. v. Timex*, 384 F.3d 700 (9th Cir. 2004). A plaintiff cannot merely present an infringer's gross revenue, but rather must identify a particular revenue stream that bears a "legally sufficient relationship" to the infringement. *Polar Bear*, 384 F.3d at 711. "[O]nce liability has been shown, § 504(b) creates an initial presumption that the infringer's profits attributable to the infringement are equal to its gross revenue." *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005). The rationale for this burden-shifting lies in the notion that "'[v]ery often, the act of infringement allows the infringer to pocket as net profit a much larger percentage of his gross revenue than he could have absent the infringement.'" 4 Nimmer on Copyrights § 14.03[B] (quoting *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir.1998)).

### i.   Profits of the Hack Developers.

The records produced by PayPal for the Hack Developers show that the Hack Developers received at least $688,316.22 in revenue for sales of the "Terminal Manager" or "Terminal" and/or that explicitly refer to MapleStory.[23] This amount is "attributable to the infringement," and as such, Nexon is entitled to the presumption that "the infringer's profits attributable to the infringement are equal to its gross revenue" unless and until that presumption is rebutted by the Hack Developers. *Bonner*, 404 F.3d at 294.

### ii.   Profits of the Hack Users.

---

[23] Cherry Dec at ¶¶ 22-23.

15

The records produced by PayPal show that the Hack Users collectively received at least $370,593.63 in revenue from sales that explicitly relate to the conduct at issue in this lawsuit.[24] Approximately 44% of the transactions (*i.e.*, 11,851 transactions that total $1,613,414.52) contain *no information* whatsoever about the nature of the transaction because the fields that contain information about the transaction are blank.[25] There is no legitimate explanation for the fact that the Defaulting Defendants received $1,613,414.52 in revenue without a single word of explanation. The lack of detail and lack of any shipping address suggests that this revenue represents ill-gotten gains and that the Defaulting Defendants specifically decided not to make a record of their unlawful acts related to violation of Nexon's rights.

Although Nexon is unable to prove definitively that the blank transactions relate to the conduct at issue in this lawsuit, "the Court must draw all reasonable inferences in Plaintiff's favor on account of Defendant's failure to participate in the litigation process."[26] It is reasonable to conclude that the transactions with no information are related to the conduct at issue in this case because (1) all of the transactions occurred during the same period of time that the Hack was available, (2) the dollar amounts are similar to the transactions that explicitly relate to MapleStory, and (3) there is an incentive for the Defaulting Defendants to avoid documenting their violations of Nexon's rights. Moreover, rewarding Defendants who chose to incorporate no information into their transactions makes no sense as a matter of policy because it would simply send a message to other software pirates that liability can be avoided by *not* tracking revenue. Finally, if Defendants object to the inclusion of revenue, they can appear and defend their conduct.

   **b.  <u>As an Alternative to Disgorgement, Nexon is Entitled to Statutory Damages Under the Copyright Act.</u>**

---

[24] Cherry Dec. at ¶¶ 26-27.
[25] Cherry Dec. at ¶ 29.
[26] *Blizzard Entm't. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 WL 4054095, at *3.

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Intern. v. Pausa Records,* 909 F.2d 1332, 1336 (9th Cir. 1990). "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Adobe Sys., v. Tilley,* No. 09-01085-PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010). The Copyright Act authorizes the Court to award statutory damages against each Defendant "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the infringement is "willful," the court may increase the award to $150,000. Id. at § 504(c)(2). "[A]n infringement is 'willful' if the defendant had knowledge that its actions constitute an infringement." *N.A.S. Imp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992). Willfulness "need not be proven directly but may be inferred from the defendant's conduct." *Id.* Willfulness may also be inferred or admitted based on a defendant's failure to defend. *Derek Andrew v. Poof Apparel*, 528 F.3d 696, 702 (9th Cir. 2008) (holding "all factual allegations in the complaint are deemed true, including the allegation of [a defendant's] willful infringement").

In assessing statutory damages, the Court is to advance the "dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers." *Walpole Woodworkers, v. Atlas Fencing*, 218 F.Supp.2d 247, 252 (D. Conn. 2002) (internal citation omitted). Statutory damages are particularly appropriate when other measures of remedies cannot be determined due to actions of the defendant.[27] In view of Defendants' default, Nexon cannot determine the full extent of the Defaulting Defendants' infringement or their ill-gotten gains.

---

[27] 4 Nimmer on Copyrights § 14.04 (2021) ("When a defendant's own lack of cooperation in discovery is responsible for an inability to determine its profits, it cannot be heard to complain about the imposition of high statutory damages.").

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

Although the facts support a finding of willfulness, Nexon seeks an award of $30,000.00 for each of the two copyright registrations at issue (*i.e.*, a total of $60,000.00) against each of the Defaulting Defendants with revenue less than $60,000.00.

### c.  **Nexon is Entitled to Statutory Damages under Section 1201 for Circumvention of Nexon's Access Control Measures.**

In lieu of actual damages and profits, a prevailing plaintiff under the DMCA "may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 [n]or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).

### i.  **Circumvention Award Against the Hack Developers.**

The records produced by PayPal show that the Hack Developers completed at least[28] 26,557 sales of the Terminal Manager program.[29] This is a reasonable approximation of the minimum number of DMCA violations Defendants committed, especially in light of recognized difficulty determining the number of violations in similar cases.[30]

Although the facts support an award at the maximum end of the statutory range, Nexon requests an award equal to $200.00 (*i.e.*, the minimum statutory minimum amount) for each sale

---

[28] The number of sales is an underestimate because the Hack Developers also accepted payment through cryptocurrency, and none of those records are available. *See* FAC at ¶ 72.
[29] Cherry Dec. at ¶ 30.
[30] *Blizzard Entm't.* at *3 ("Based on these allegations, it is reasonable to infer that Defendant has provided each of its users with anti-circumvention products or services on at least one occasion. Although Plaintiff is unable to prove this fact definitively, the Court must draw all reasonable inferences in Plaintiff's favor on account of Defendant's failure to participate in the litigation process.").

18

of the Hack. The records from PayPal show that the Hack Developers sold versions of the Hack in various configurations to customers who are not before this Court as set forth below.[31]

| Type of Sale | Number of Sales | Multiplier | Damages Per Violation | Total |
|---|---|---|---|---|
| 1 Month Subscriptions | 25,113 | 1 | $200.00 | $5,022,600.00 |
| 3 Month Subscriptions | 1,036 | 1 | $200.00 | $207,200.00 |
| 5 Clients | 385 | 5 | $200.00 | $385,000.00 |
| 20 Clients | 17 | 20 | $200.00 | $68,000.00 |
| Unlimited Clients[32] | 6 | 50 | $200.00 | $60,000.00 |
| Purchases by the Hack Users[33] | -3,882 | 1 | $200.00 | ($776,400.00) |
| Total | | | | $4,966,400.00 |

### ii.   Circumvention Award Against the Hack Users.

Each purchase of the Hack by the Hack Users must correspond to at least one act of circumvention—otherwise the Hack User would not have purchased it. Nexon seeks an award of $200.00 per purchase completed by each Hack User, as set forth below. *See* Cherry Dec. at ¶ 31.

| Defaulting Defendant | Number of Purchases | Damages per Violation | Total |
|---|---|---|---|
| Mike (Mike.316@outlook.com) | 871 | $200.00 | $174,200.00 |
| John Artuz (Johnartuz@hotmail.com) | 357 | $200.00 | $71,400.00 |
| Alain Koopmans (Alain.k91@gmail.com) | 330 | $200.00 | $66,000.00 |
| Marvin Lei (iammarvinlei@gmail.com) | 318 | $200.00 | $63,600.00 |
| Matthew Rahminov (hypermatthew@gmail.com) | 247 | $200.00 | $49,400.00 |
| Destin Adamski (destin.adamski@gmail.com) | 223 | $200.00 | $44,600.00 |
| Driven Enterprise (ruronikenshin1337@yahoo.com) | 213 | $200.00 | $42,600.00 |
| Victor Park (dhp960126@gmail.com) | 208 | $200.00 | $41,600.00 |
| Moises Silverio Paulus (msilveriopaulus@gmail.com) | 173 | $200.00 | $34,600.00 |

---

[31] Cherry Dec. at ¶ 30. Sales of copies of the Hack to the other Defaulting Defendants are subtracted from this total to avoid double counting of these sales and to only include sales to customers who are not before this Court. Nexon seeks a separate award for circumvention against the Hack Users for their use of the Hack.

[32] A multiplier must be selected for the "unlimited" option or the resulting amount would be infinite. Nexon selected 50 as a conservative estimate, but the actual number is likely far greater.

[33] The total number of purchases made by the Hack Users, which is shown below, is subtracted from the total sales made by the Hack Developers to avoid double counting these sales.

| | | | |
|---|---|---|---|
| Dor Avital (dorypp98@gmail.com) | 167 | $200.00 | $33,400.00 |
| Bibi Ali (LeShortName@gmail.com) | 162 | $200.00 | $32,400.00 |
| Jancarlos Garcia Saavedra (jancarlitos1@hotmail.com) | 137 | $200.00 | $27,400.00 |
| Tony Ngo (tonyngo1398@gmail.com) | 134 | $200.00 | $26,800.00 |
| Selim Aydogan (selim_aydogan0@hotmail.com) | 124 | $200.00 | $24,800.00 |
| Wenhao Ma a/k/a 文浩 (pay@gamerlight.com) | 113 | $200.00 | $22,600.00 |
| Hao Vu (MemeGoreng@outlook.com) | 105 | $200.00 | $21,000.00 |
| | 3882 | | $776,400.00 |

### d. **Summary of Damages Requested.**

The following table summarizes the total damages requested by Nexon from each Defaulting Defendant. The numbers shown in bold are incorporated in the Total Damages Requested column and reflect Nexon's election of either disgorgement of profits or statutory damages for its claim of copyright infringement.

| Defendant | Copyright Infringement (Disgorgement of Profits) | | | Copyright Infringement (Statutory Damages) | Statutory Circumvention Damages Table 9 and Table 10 in Cherry Dec. | Total Damages Requested |
|---|---|---|---|---|---|---|
| | Table 7 in Cherry Dec. | Tables 4, 7 and 8 in Cherry Dec. | Total | | | |
| GK, Nathan Jones, Colin Sullivan, John Kim | | $688,316.22 | **$688,316.22** | $60,000.00 | $4,967,400.00 | **$5,655,716.22** |
| Mike | | | $0.00 | **$60,000.00** | $174,200.00 | **$234,200.00** |
| John Artuz | $6,712.10 | $131,300.18 | **$138,012.28** | $60,000.00 | $71,400.00 | **$209,412.28** |
| Alain Koopmans | | | $0.00 | **$60,000.00** | $66,000.00 | **$126,000.00** |
| Marvin Lei | $106,844.03 | $215,809.86 | **$322,653.89** | $60,000.00 | $63,600.00 | **$386,253.89** |
| Matthew Rakhminov | $11,528.01 | $78,943.81 | **$90,471.82** | $60,000.00 | $49,400.00 | **$139,871.82** |
| Destin Adamski | $28,611.89 | $278,365.70 | **$306,977.59** | $60,000.00 | $44,600.00 | **$351,577.59** |
| Driven Enterprises | $0.00 | $7,281.34 | $7,281.34 | **$60,000.00** | $42,600.00 | **$102,600.00** |

| Defendant | Copyright Infringement (Disgorgement of Profits) | | | Copyright Infringement (Statutory Damages) | Statutory Circumvention Damages Table 9 and Table 10 in Cherry Dec. | Total Damages Requested |
| --- | --- | --- | --- | --- | --- | --- |
| | Table 7 in Cherry Dec. | Tables 4, 7 and 8 in Cherry Dec. | Total | | | |
| Victor Park | $2,505.69 | $33,463.32 | $35,969.01 | **$60,000.00** | $41,600.00 | **$101,600.00** |
| Moises Silverio Paulus | $1,328.48 | $61,292.33 | **$62,620.81** | $60,000.00 | $34,600.00 | **$97,220.81** |
| Dor Avital | $3,393.23 | $84,950.85 | **$88,344.08** | $60,000.00 | $33,400.00 | **$121,744.08** |
| Bibi Ali | $294.20 | $1,982.93 | $2,277.13 | **$60,000.00** | $32,400.00 | **$92,400.00** |
| Jancarlos García Saavedra | $2,980.00 | $41,031.46 | $44,011.46 | **$60,000.00** | $27,400.00 | **$87,400.00** |
| Tony Ngo | | $3,467.18 | $3,467.18 | **$60,000.00** | $26,800.00 | **$86,800.00** |
| Selim Aydogan | | | $0.00 | **$60,000.00** | $24,800.00 | **$84,800.00** |
| Wenhao Ma | $200,062.09 | $622,637.56 | **$822,699.65** | $60,000.00 | $22,600.00 | **$845,299.65** |
| Hao Vu | $6,333.91 | $52,888.00 | $59,221.91 | **$60,000.00** | $21,000.00 | **$81,000.00** |

The damage awards requested here, while sizeable, are consistent with law and appropriate given the brazenness of the Defaulting Defendants' conduct. Due to the Defaulting Defendants' failure to appear, it is impossible to establish a complete picture of their revenues or profits. The amount sought is not a "windfall" to Plaintiffs because Plaintiffs' harm is considerably larger than the amount requested above. The Hack Users sold access to Nexon's copyrighted content for far less it could be purchased from Nexon—otherwise there would be no incentive for purchasers to acquire the purloined digital content from the Hack Users rather than legitimately purchasing the content from Nexon. Accordingly, even if Nexon succeeds in collecting all of the judgment Nexon will still be in a worse position that it would have been if it had sold the content directly.

### V.     Nexon is Entitled to the Injunctive Relief Sought in its Verified Complaint.

A permanent injunction is appropriately granted where the plaintiff shows (1) that it has suffered irreparable injury, (2) that there is no adequate remedy at law, (3) that the balance of the

hardships are in its favor, and (4) that an injunction is in the public's interest. *eBay v. MercExchange*, 547 U.S. 388, 319 (2006).

### a. Irreparable Injury and Lack of an Adequate Remedy at Law.

Nexon faces irreparable injury based on the Defaulting Defendants' violations of Nexon's copyrights[34] and hacking.[35] Plaintiffs have no adequate remedy at law for these infringements, particularly because an award of damages for past infringement does not prevent continuing violations of Plaintiffs' rights.

### b. The Balance of Harms Tips Conclusively in Nexon's Favor.

Willfully infringing defendants are entitled to little equitable consideration: "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l v. Reed Elsevier*, 866 F.Supp. 585, 587-88 (D.D.C. 1994). Defendants have blatantly and knowingly violated Nexon's copyrights, trademarks, and other rights in a scheme to enrich themselves at Nexon's expense. Defendants' disregard for Nexon's rights is clear, and "when the case for infringement is clear, a defendant cannot avoid [an] injunction by claiming harm to a business built upon that infringement." *Gen. Motors v. Urban*

---

[34] *See Sony Music v. Global Arts Prod.*, 45 F.Supp.2d 1345, 1347 (S.D. Fla. 1999) ("Injunctive relief is a traditional remedy for copyright infringement, and is especially favored where there is a history of continuing infringement and a substantial threat of continued infringement.").

[35] *Facebook, v. Power Ventures*, 252 F.Supp.3d 765, 782 (N.D. Cal. 2017), aff'd, 749 F. App'x 557 (9th Cir. 2019) ("Numerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm."); *Fla. Atl. Univ. Bd. of Trustees v. Parsont*, 465 F.Supp.3d 1279, 1296 (S.D. Fla. 2020) ("Unsurprisingly, federal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury."); *Facebook. v. Fisher*, No. C 09-05842 JF (PVT), 2009 WL 5095269, at *2 (N.D. Cal. Dec. 21, 2009) (entering TRO enjoining violation of CFAA by defendants engaged in phishing and spamming activities and finding "clear possibility of irreparable injury with respect both to Facebook's reputation and to the personal privacy of Facebook users").

22

*Gorilla*, 500 F.3d 1222, 1229 (10th Cir. 2007). Equity thus requires that Defendants be ordered to cease their unlawful conduct.

      **c.**   **The Public Interest Favors Fair Competition and Preventing Infringement.**

An injunction will further the public's interest by preventing the Hack Developers from continuing to mislead the public and to violate Nexon's rights. The public has an interest in "the right not to be deceived or confused." *Optician Ass'n of America v. Independent Optician of Am.,* 920 F.2d 187, 197 (3d Cir. 1990). "The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works." *C.B. Fleet Co., v. Unico Holdings*, 510 F. Supp.2d 1078, 1084 (S.D. Fla. 2007) (citation omitted).  The acts of Defendants, if allowed to continue unrestrained, interfere with Nexon's business reputation and undermine the appeal of MapleStory to users and potential users as a fun and legitimate game, destroying the goodwill that Nexon has built at significant expense. In contrast, there is no public benefit to permitting "hacking" and "cheating" by the Defaulting Defendants.

**VI.**   **The Court Should Award Nexon's Reasonably Incurred Attorneys' Fees.**

An award of Nexon's fees and costs is appropriate on two grounds. First, Section 505 of the Copyright Act authorizes an award of fees. Under the Copyright Act, the Supreme Court emphasized that Section 505 should be interpreted in view of the purpose thereof, namely, "copyright law ultimately[, which] serves the purpose of enriching the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979, 1986 (2016) (quoting *Fogerty v. Fantasy*, 510 U.S. 517 (1994)). Nothing about the conduct of the Defaulting Defendants promotes "the purpose of enriching the general public through access to creative works." Instead, "this case is the digital equivalent of standing outside the neighborhood Redbox — or Blockbuster Video, for fans of history — and giving away copies of the movie for free." *Glacier Films (USA) v. Turchin*, 896 F.3d 1033, 1041 (9th Circ. 2018).

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

Second, Section 3344 of the California Civil Code entitles prevailing parties to an award of "attorney's fees and costs." Cal. Civ. Code § 3344(a).

Local Rule 55-3 provides a schedule for the calculation of attorney's fees on a default judgment. See C.D. Cal. L.R. 55-3; *see also RD Legal Funding, LLC*, 2013 WL 1767962 at *3. Nexon requests that the award of attorney's fees be awarded against each defendant based on the award entered by the Court and the calculation set forth in Local Rule 55-3.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter default judgment against each of the Defaulting Defendants and enter the proposed order attached hereto as Exhibit Z.

Date: May 20, 2022

PHILLIPS WINCHESTER, LLC

/s/ Jared L. Cherry
Jared L. Cherry (admitted *pro hac vice*)
Counsel for Plaintiffs Nexon America
Inc. and Nexon Korea Corporation

## **CERTIFICATE OF SERVICE**

1.   I hereby certify that on May 20, 2022, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**MOTION FOR DEFAULT JUDGMENT**

2.   Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

3.   I hereby certify that on May 20, 2022, I transmitted the following document to each Defendant listed below by email.

**MOTION FOR DEFAULT JUDGMENT**

| Defendant | Email Address |
|---|---|
| Alain Koopmans | Alain.k91@gmail.com |
| Bibi Ali | LeShortName@gmail.com |
| Colin Sullivan | apptrailerjones@hotmail.com<br>kenb.zaks@gmail.com |
| Destin Adamski | destin.adamski@gmail.com |
| Dor Avital | dorypp98@gmail.com |
| Driven Enterprise | ruronikenshin1337@yahoo.com |
| GK | apptrailerjones@hotmail.com<br>kenb.zaks@gmail.com |
| Hao Vu | MemeGoreng@outlook.com |
| Jancarlos García Saavedra | jancarlitos1@hotmail.com |
| John Artuz | Johnartuz@hotmail.com |
| John Kim | apptrailerjones@hotmail.com<br>kenb.zaks@gmail.com |
| Marvin Lei | iammarvinlei@gmail.com |
| Matthew Rahminov | hypermatthew@gmail.com |

Memorandum of Points and Authorities in
Support of Motion for Default Judgment

| Defendant | Email Address |
|---|---|
| Mike | Mike.316@outlook.com |
| Moises Silverio Paulus | msilveriopaulus@gmail.com |
| Nathan Jones | apptrailerjones@hotmail.com<br><br>kenb.zaks@gmail.com |
| Selim Aydogan | selim_aydogan0@hotmail.com |
| Tony Ngo | tonyngo1398@gmail.com |
| Victor Park | dhp960126@gmail.com |
| Wenhao Ma | pay@gamerlight.com |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 20, 2022, at Salt Lake City, Utah.

/s/ Jared L. Cherry

26